**UNITED STATES**

v.

**Airman First Class Billy Joe GALCHICK, United States Air Force.**

**ACM 32990.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 10 Sept. 1997.

Decided 14 March 2000.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Major Kevin P. Koehler.

Appellate Counsel for the United States: Colonel Michael J. Breslin and Lieutenant Colonel William B. Smith.

Before YOUNG, Senior Judge, HEAD, and ROBERTS, Appellate Military Judges.

OPINION OF THE COURT

HEAD, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial, composed of officer members, of wrongful use of methamphetamine and false swearing, in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934. His approved sentence is a bad-conduct discharge, 12 months' confinement, and reduction to E–1. The appellant claims the military judge committed prejudicial error in failing to grant a motion to dismiss the false swearing charge for failure to state an offense. Additionally, the appellant claims the evidence was factually insufficient to sustain the findings of guilty to

wrongful use of methamphetamine and false swearing. We find the evidence was factually sufficient to sustain the finding of guilty to wrongful use of methamphetamine. However, although the specification states an offense, we set aside the appellant's conviction on the false swearing charge because the evidence was legally insufficient to establish the elements of the offense.

## I. Failure To State An Offense

The elements of the offense of false swearing are:

(1) That the accused took an oath or an equivalent;

(2) That the oath or equivalent was administered to the accused in a matter in which such oath or equivalent was required or authorized by law;

(3) That the oath or equivalent was administered by a person having authority to do so;

(4) That upon this oath or equivalent the accused made or subscribed a certain statement;

(5) That the statement was false;

(6) That the accused did not then believe the statement to be true; and

(7) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Appellant directs our attention to the military judge's denial of appellant's motion to dismiss for failure to state an offense. The essence of the motion was that the sworn statement, which was the subject of the additional charge, was given during an Article 32 hearing, which was a judicial proceeding or a course of justice, and therefore could not be charged as false swearing. The focus of a motion to dismiss for failure to state an offense is the specification itself, not the fact that the accused may have some defense to the charge. *United States v. Commander*, 39 M.J. 972, 980 (A.F.C.M.R. 1994); *United States v. Snyder*, 428 F.2d 520, 522 (9th Cir.1970). In order to avoid dismissal for failure to state an offense, a specification must contain the elements of the offense intended to be charged in sufficient detail to place the accused on notice of the allegation against which he must be prepared to defend and to provide a bar against a second trial for the same offense after acquittal or conviction of the offense. *United States v. Sell*, 11 C.M.R. 202, 206, 1953 WL 2005 (C.M.A.1953); *see United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A.1983). In this particular case, the specification contained all of the elements of the charged offense and was sufficient. The basis for the appellant's argument is more properly a defense to the charge and a question of legal sufficiency as to the evidence supporting the charge.

## II. Legal And Factual Sufficiency

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable factfinder could have found the appellant guilty of all elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Ladell*, 30 M.J. 672, 673 (A.F.C.M.R.1990). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witness, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

On 14 May 1997, the appellant was charged with possession of marijuana and use of methamphetamine. On 16 May 1997, an Article 32 hearing was convened to investigate the appellant's charges. During the Article 32 hearing the appellant submitted a previously prepared written statement to the Article 32 investigating officer (IO) for his consideration. The statement indicated that at no time in his life had the appellant used or possessed methamphetamine. Prior to signing the statement, the government representative at the Article 32 hearing administered an oath to the appellant whereby the appellant swore that the written statement he was about to make was "the truth, the

whole truth, and nothing but the truth, so help you God." The appellant then signed the written statement at the Article 32 hearing. While the bottom of the written statement indicated the language contained in it was true, the statement failed to say that the appellant made the statement under penalty of perjury. The appellant's sworn statement was referenced by the IO in his report during his discussion of the evidence concerning the appellant's wrongful use of methamphetamine. Thereafter, on 24 July 1997, the government preferred an additional charge of false swearing against the appellant based upon his Article 32 statement.

### A. False Swearing

■ Manual For Courts–Martial, United States (MCM), Part IV, ¶ 79(c) (1995 ed.) defines false swearing as "the making under a lawful oath or equivalent of any false statement, oral or written, not believing the statement to be true." It does not include such statements made in a "judicial proceeding or course of justice." This section adopts the definition of judicial proceeding or course of justice found in the perjury discussion of the Manual, which references an Article 32 investigation.

MCM, Part IV, ¶ 57(a) states that an individual may be prosecuted for perjury only if he testifies falsely under oath at a judicial proceeding or course of justice or, in such a forum, subscribes a false written statement made under penalty of perjury as permitted under 28 U.S.C. § 1746. Under this United States Code provision, the false statement must expressly contain language that the statement is being made under penalty of perjury. As previously mentioned, the Manual, in paragraph 57(c)(1) relating to perjury, defines "course of justice" as including an investigation conducted under Article 32, UCMJ.

We conclude the evidence was legally insufficient to support the appellant's conviction for false swearing. There is no question that an Article 32 pretrial investigation is a judicial proceeding or course of justice. San Antonio Express–News v. Morrow, 44 M.J.

706 (A.F.Ct.Crim.App.1996). Further, at an Article 32 hearing, the accused has the right to submit a statement in any form. Rule for Courts–Martial (R.C.M.) 405(f)(12). However, if the accused elects to accomplish a sworn written statement while in the Article 32 investigation, any falsity in that statement can be prosecuted as perjury only if that statement expressly subjects the individual to the penalty of perjury. MCM, Part IV, ¶ 57(c)(3). Further, should the written statement fail to subject the individual to the penalty of perjury, even if sworn, the falsity cannot be charged as false swearing. United States v. Smith, 26 C.M.R. 16, 1958 WL 3282 (C.M.A.1958); United States v. Byard, 29 M.J. 803 (A.C.M.R.1989).

In deciding Smith, the majority opinion overturned a long-standing military rule which recognized that false swearing could be committed in a judicial proceeding. In his dissent, Judge Latimer pointed out that all Army and Air Force Manuals since 1921 had firmly supported the principle that false swearing was an offense different from perjury and that either offense could be committed in a judicial proceeding. However, some time between Judge Latimer's dissent and the adoption of the 1969 Manual, the President decided to amend the Manual to follow the ruling in the Smith case. The 1969 Manual was adopted with specific language which prohibited false swearing from being charged if the offense took place in a judicial proceeding or course of justice. MCM, Chapter XXVIII, ¶ 213(f)(4) (1969 ed.). Later, the language requiring a written statement be made under the penalty of perjury, in order to prosecute that perjury, was added by Public Law 94–550 of 1976 which amended Article 131 by adding a second clause based on section 1746 of Title 28 United States Code. This change was reflected in the 1984 Manual. MCM, Part IV, ¶ 57(a). In using this language in all subsequent editions of the Manual, we conclude that the President intended to grant the appellant greater protection than would otherwise be authorized under substantive criminal law.[1]

---

1. The dissent attempts to distinguish the facts in the appellant's case from those found in Smith. United States v. Smith, 26 C.M.R. 16, 1958 WL

3282 (C.M.A.1958). While Smith involved false testimony at a court-martial and the appellant's case concerns a false written statement at an

*United States v. Davis,* 47 M.J. 484, 486 (1998).

In this particular case, the appellant voluntarily submitted a sworn written statement to the IO for his consideration.[2] The statement was not made subject to the penalty of perjury. Consequently, the appellant could not be found guilty of false swearing.

Finally, this was not a situation where the sworn statement was made outside the confines of the Article 32 investigation. In this particular case, the appellant swore to his statement, signed it and provided it to the IO during the actual Article 32 hearing. This situation should be distinguished from one where an individual provides a sworn statement to the Air Force Office of Special Investigations or Air Force Security Forces at one location on one date and thereafter the sworn statement is introduced at an Article 32 hearing at another place and date. In this later situation, the false swearing would have occurred outside the Article 32 hearing and thus would be subject to prosecution.

### B. Wrongful Use of Methamphetamine

The appellant next asserts that the evidence was factually insufficient to sustain a conviction for wrongful use of methamphetamine. Although the appellant framed his issue as one of factual sufficiency, we note that in the conclusion of his brief, he asserts there is no factual or legal basis to sustain his conviction for wrongful use of methamphetamine. Accordingly, we have examined the evidence in this case for both factual and legal sufficiency.

■ We disagree with the appellant's assertion that the evidence was neither legally nor factually sufficient to support his conviction for wrongful use of methamphetamine. In our view, a reasonable factfinder could conclude that the appellant committed the offense. Proof beyond a reasonable doubt as to an accused's guilt does not mean that the evidence must be free of conflict. *United States v. Steward,* 18 M.J. 506 (A.F.C.M.R. 1984). After hearing all of the evidence and observing the demeanor of the witnesses, the court members, after careful deliberation, found that the evidence established, beyond a reasonable doubt, the appellant's guilt of wrongful use of methamphetamine. The fact that the members acquitted the appellant of wrongful possession of marijuana is indicative of the care they took to weigh the evidence. After reviewing the record of trial, we are convinced that the evidence was legally and factually sufficient to support the appellant's conviction for wrongful use of methamphetamine.

### III. Conclusion

Consistent with our determination that the evidence was legally insufficient to support a conviction for false swearing, the finding of guilty is set aside and the additional charge and its specification are dismissed. We must now reassess the sentence or return the case

---

Article 32 hearing, the pivotal point is that both offenses occurred under oath at a judicial proceeding. Accordingly, the proper charge is perjury because false swearing cannot be committed at a judicial proceeding. While the dissent would have us reject the holding in *Smith,* we decline to do so. Courts of Criminal Appeals are not generally free to ignore the precedents of their superior courts. *United States v. Allbery,* 44 M.J. 226, 227 (1996). Further, "[a] precedent-making decision may be overruled by the court that made it or by a court of a higher rank." *Id.* at 228 (quoting 20 Am.Jur.2d *Courts* § 186 (1965)). The majority concludes that based on the language contained in *Smith,* that language is absolutely binding on us. Finally, while the dissent asserts that false swearing is a lesser included offense of perjury, we conclude that we need not address this issue. The President, through his approval of the wording in the *Manual* stating that false swearing does not include sworn statements made in a judicial proceeding or

course of justice, has given the appellant a greater right than that conveyed by the Constitution or the Uniform Code of Military Justice. Accordingly, we will not disturb the President's narrowing construction limiting the prosecution of false swearing. *United States v. Davis,* 47 M.J 484, 486 (1998).

2. We note that the appellant swore to the truthfulness of his written statement on two different occasions at the Article 32 hearing. The first occasion was when he raised his right hand and took the oath from the government representative. The second time was when he signed the written statement which contained language that the statement was true. Since the appellant was not charged with perjury, we need not address the question of whether the oath administered by the government representative would have been sufficient enough to subject the appellant to a charge of perjury.

for a rehearing on sentence. *United States v. Jones*, 39 M.J. 315 (C.M.A.1994); *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). We are confident we can determine the sentence, as the members would have adjudged, absent the false swearing charge and its specification. We reassess the sentence by approving only so much of the sentence as includes a bad-conduct discharge, confinement for 8 months, and reduction to E–1. We have given individualized consideration to the seriousness of the conviction, the character and military performance of the appellant and all circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We believe that by affirming the sentence as reassessed, justice has been done and the appellant has received the punishment he deserves. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988).

## IV. Decretal

The approved finding of guilty as to false swearing is reversed and that charge and its specification are set aside. The remaining finding of guilty, and the sentence, as modified, are correct in law and fact. Accordingly, the findings and sentence, as modified, are

AFFIRMED.

Judge ROBERTS concurs.

YOUNG, Senior Judge (concurring in part and dissenting in part):

I dissent from the majority's holding that the appellant's conviction for false swearing is legally insufficient.

## I. Background

The appellant and his counsel prepared a typed statement to submit to the Article 32 investigating officer (IO). At the Article 32 investigation, the defense counsel told the IO the appellant wanted the statement to be given under oath. The IO decided that, because the government representative normally administered the oath to witnesses, the government representative should also administer the oath to the appellant. The appellant stood and raised his right hand. The government representative administered the following oath: "Do you solemnly swear that the statement you're about to make is the truth, the whole truth, and nothing but the truth, so help you God?" The accused answered in the affirmative and signed at the bottom of the document which contained the following language when submitted:

> I hereby voluntarily and of my own free will make this statement without having been subjected to any coercion, unlawful influence, or unlawful inducement. I swear I have read this statement, initialed all pages and corrections, and it is true and correct to the best of my knowledge.

The jurat, which was also already typed on the statement, contained the following language: "Subscribed and sworn before me, a person authorized by law to administer oaths, this 16th day of May 1997." The IO accepted the statement, and it was attached to his report as an exhibit. Based on these facts, the appellant was convicted of false swearing.

## II. The Majority Opinion

The opinion of the majority can be summarized as follows:

1. The appellant swore to his written statement in an Article 32 investigation.

2. The definition of false swearing contained in the *Manual for Courts–Martial, United States* (*MCM* or *Manual*), Part IV, ¶ 79(c) (1995 ed.), specifically excludes "statements made in a judicial proceeding or course of justice."

3. An Article 32 investigation is "a course of justice." *MCM*, Part IV, ¶ 57(c)(2).

4. Therefore, the appellant cannot be convicted of false swearing.

## III. Analysis

### A. The President and the Manual for Courts–Martial

The military has hierarchical sources of rights. Listed in order of precedence, they are the Constitution; federal statutes, including the Uniform Code of Military Justice; executive orders, including the *Manual for Courts–Martial;* Department of Defense Directives; service directives; and federal common law. *See United States v. Lopez*, 35 M.J. 35, 39 (C.M.A.1992). Part IV of the *Manual* contains listings of the elements of

each offense and explanations of those elements. While the President's view of the substantive criminal law is important, it is not binding on this Court, at least for those offenses specifically delineated by Congress. *United States v. Mance*, 26 M.J. 244, 252 (C.M.A.1988).

> Part IV of the *Manual* is not expressly governed by Article 36(a). Nonetheless, where the President *unambiguously* gives an accused greater rights than those conveyed by higher sources, this Court should abide by that decision unless it clearly contradicts the express language of the Code.

*United States v. Davis*, 47 M.J. 484, 486 (1998) (emphasis added). So, our first task is to determine whether, by his summary of the law of false swearing in the *Manual*, the President intended to grant the appellant greater protection than would otherwise be authorized under the substantive criminal law. If he did, the majority is correct. Otherwise, reliance on *Manual* provisions to overturn the appellant's conviction is misplaced, and we must look further to decide the fate of the false swearing charge.

The fundamental purpose of the *Manual for Courts–Martial* is to serve as a "comprehensive body of law governing the trial of courts-martial and as a guide for lawyers and nonlawyers in the operation and application of such law." *MCM*, A21–1 (1995 ed.). For the *Manual* to fulfill its purpose of being comprehensive, it must contain an accurate description of the law—whether the President agrees with it or not. Thus, when the *Manual* changes to conform to an opinion of an appellate court, it is difficult to discern whether the President meant to embrace the court's opinion and grant the accused greater rights or merely acquiesced and included it to keep the *Manual* current and accurate. Tracing the histories of false swearing and perjury may reveal whether the President unambiguously intended to grant the appellant greater rights than higher sources.

### B. The History of Perjury and False Swearing

The development of the law of perjury, like much of the common law, is convoluted. Perjury developed at early common law in recognition of the special need to ensure the integrity of testimony in judicial proceedings. The early penalty for perjury was " 'death, afterwards banishment, or cutting out the tongue; then forfeiture of goods; and now [in Blackstone's time] it is fine and imprisonment and never more be capable of giving testimony.' " Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 510 (3d ed.1982) (quoting 4 William Blackstone, *Commentaries* *163).

In time, society came to recognize the importance of sworn statements outside of judicial proceedings, and the common law responded with the offense of false swearing. Although false swearing did not require that the statement be made in a judicial proceeding, it was still a lesser included offense of perjury. At the height of the common law, perjury and false swearing were misdemeanors. *Id.* at 510–11.

Most jurisdictions in the United States have enacted statutes establishing perjury and false swearing as felonies. In the states, there are three statutory schemes that cover this area of the law. One scheme groups all false statements given under oath into one offense known as perjury. Another includes the distinctions between perjury and false swearing as different degrees of perjury. The third scheme retains the common law distinctions between perjury and false swearing. Under this last scheme, as at common law, false swearing is a lesser included offense of perjury. *Id.* at 512.

In early American military law, "[f]alse swearing by a witness before a court-martial [was] not perjury at common law, nor [was] it made a specific offense by any of the Articles of War." George B. Davis, *A Treatise on the Military Law of the United States* 455 (2d ed. revised 1909). Nevertheless, the offense of perjury could be prosecuted by charging a violation of the federal perjury statute as a non-capital offense under the General Article. *Id.* at 455 n. 2. The prosecution could also prosecute the lesser offense of giving false testimony as a neglect to the prejudice of good order and discipline, and thereby avoid some of the rigorous standards of proof required for perjury. *Id.* at 456; William

Winthrop, *Military Law and Precedents* 730 (2d ed.1920 reprint).

In 1916, the offense of perjury was prohibited in the Army by statute. Article of War (A.W.) 93 (1916) *reprinted in Manual for Courts–Martial, United States Army, 1917* (*MCM, 1917*), ¶ 443. Article 93 did not define the offense; it just listed perjury as one of several offenses the commission of which could be punished by courts-martial. This amounted to the adoption of the common law crime of perjury. Perjury in the military was then defined as the willful and corrupt giving, upon a lawful oath, or in any form allowed by law to be substituted for an oath, in a judicial proceeding or course of justice, of false testimony material to the issue or matter of inquiry. *MCM, 1917*, ¶ 443, § VIII. The offense seems to have included the presentation of sworn affidavits in a judicial proceeding or course of justice. *Id.* The *Manual* did not discuss the separate offense of false swearing; however, it was listed in the table of maximum punishments, under A.W. 96, the General Article, as an offense for which a dishonorable discharge and confinement for 3 years was authorized. The maximum punishment for perjury, under A.W. 93, was a dishonorable discharge and confinement for 5 years. *MCM, 1917*, ¶ 349.

A major revision was made to the Articles of War in 1920, and a new, more comprehensive *Manual for Courts–Martial* was issued in 1921. Perjury was still an undefined offense under Article 93, but the discussion in the new *Manual* abandoned the common law explanation of the offense. Instead, the discussion focused on the statutory definition of perjury contained in Section 125 of the Federal Penal Code of 1910. *MCM, 1921*, ¶ 443, § IX. False swearing was explained and listed as an offense, under Article of War 96, as conduct of a nature to bring discredit upon the military service. This offense involved giving false testimony before courts and tribunals not acting under federal law and in other cases in which no law of the United States authorized an oath to be given. *Id.* ¶ 446, § II. The maximum punishments for these offenses were unchanged from the 1917 *Manual. See MCM, 1921*, ¶ 349.

The *Manual for Courts–Martial* was revised in 1928. Gone were all references to the federal perjury statute. Instead, to a large extent, this *Manual* returned to the common law explanation of perjury provided in the 1917 *Manual.* But, it did add specific proof requirements: "The testimony of a single witness is insufficient to convict for perjury without corroboration by other testimony or by circumstances which may be shown in evidence tending to prove the falsity"—the so-called two-witness rule. *See MCM, 1928*, ¶ 149*i.* The explanation for false swearing as an offense under A.W. 96 changed substantially. "Depending on the circumstances and place of commission, false swearing" could be punished as a non-capital offense, as conduct prejudicial to good order and discipline, or as conduct of a discreditable nature. The *Manual* specifically made false swearing applicable to "giving false testimony in a judicial proceeding or course of justice on other than material matters or in making a false oath in an affidavit." *Id.* ¶ 152*c.* No substantial changes were made to either provision in the 1949 *Manual.*

In the Navy, perjury was apparently prosecuted as a violation of the General Article (Articles for the Government of the Navy (A.G.N.) 22), using the federal statute as a basis. *See Naval Courts and Boards (NCB) 1917* § 79. Later, the offense of making a false oath for the purpose of obtaining the approval of a claim against the United States was also labeled perjury. A.G.N. 14, ¶ 4; *NCB, 1937*, §§ 80, 84. False swearing was prosecuted under A.G.N. 8 as "scandalous conduct tending to the destruction of good morals," and included knowingly giving false testimony under oath. *NCB, 1937* § 59. There was no requirement that the statement be material to the matter in issue.

In 1950, with the adoption of the Uniform Code of Military Justice, perjury was specifically defined for all military services.

Any person subject to this code who in a judicial proceeding or course of justice willfully and corruptly gives, upon a lawful oath or in any form allowed by law to be substituted for an oath, any false testimony material to the issue or matter of inqui-

ry is guilty of perjury and shall be punished as a court-martial may direct.

Article 131, UCMJ, 10 U.S.C. § 931 (1950). The 1951 *Manual* listed false swearing as an offense under Article 134, UCMJ, 10 U.S.C. § 934, the new General Article. The explanation of that offense continued the previous practice—false swearing included "giving false testimony in a judicial proceeding or course of justice on other than material matters." *MCM*, ¶ 213*d*(4) (1951). It was also listed as a lesser included offense of perjury. *MCM*, App. 12 (1951).

In 1958, our superior court decided a false statement made under oath in a judicial proceeding must meet the requirements for perjury under Article 131 or no offense was committed. *United States v. Smith*, 26 C.M.R. 16, 1958 WL 3282 (C.M.A.1958). In explaining the offense of false swearing, the next *Manual* tracked the limitations contained in the *Smith* opinion. *See MCM*, ¶ 213*f*(4) (1969 Rev.). But, it is clear that this change resulted directly from *Smith*. *See* Department of the Army Pamphlet 27–2, *Analysis of Contents of Manual for Courts–Martial, United States, 1969, Revised Edition*, 28–19—28–20 (July 1970).

In 1976, the President signed into law a sweeping revision of the federal perjury statutes, including Article 131, UCMJ. Pub.L. 94–550 (1976). The purpose and background of this statute are best described in the legislative history, set out verbatim below.

#### PURPOSE

The purpose of this legislation is to permit the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits.

#### BACKGROUND

An affidavit or other written document that requires verification by the person signing it currently must be subscribed to under oath. This requires that the person signing the affidavit or document must be taken before someone legally authorized to administer oaths (usually a notary public). A person who falsely states something in a document he subscribed to under oath is subject to the penalty imposed by law for perjury.

The requirement that the person who signs an affidavit must appear before a notary and be sworn can be inconvenient. For example, it may be necessary for the document to be executed during other than normal business hours. Further, the document may have to be executed in another country for use in the United States. This generally will require, in addition to the document subscribed to under oath, additional certifications and documents to prove such things as the authority of the officer who administers the oath and the authenticity of his seal.

The legislation provides an alternative to affidavits and sworn documents when it is necessary to require verification of the truthfulness of what the document contains. The legislation will permit the signer to subscribe to a document that expressly provides that it is being executed subject to the penalties of perjury—a procedure already in use with the federal income tax return form 1040.

1976 U.S.C.C.A.N. 5644, 5645.

The statute first established that a declaration subscribed under penalty of perjury could be used "with like force and effect" as an affidavit subscribed under lawful oath. 28 U.S.C. § 1746. The statute also amended several other statutes to take advantage of the provisions of 28 U.S.C. § 1746—18 U.S.C. § 152; 18 U.S.C. § 1546; 18 U.S.C. § 1623(a); Section 287(b) of the Immigration and Nationality Act, 8 U.S.C. § 1357(b); and, Section 5 of the Act entitled "An Act to provide for the licensing of marine radiotelegraph operators as ship radio officers, and for other purposes," 46 U.S.C. 229c. It also revised and reenacted the general federal perjury statute (18 U.S.C. § 1621) and the military perjury statute (Article 131, UCMJ, 10 U.S.C. § 931).

The revisions to 18 U.S.C. § 1621 and Article 131 were the same. The statutes were broken into two parts. The first part of each statute contains the language of the statute as it existed prior to the revision. The second part of each statute permits a prosecution for perjury if, instead of taking

an oath, an accused submitted a writing made under penalty of perjury in accordance with 28 U.S.C. § 1746. The change to Article 131, UCMJ, does not appear to have caused any change to the law of false swearing.

Normally, when a legislature reenacts a statute, there is a presumption that it adopts and approves prior judicial constructions of the act. However, the presumption does not apply when nothing indicates that the legislature had its attention directed to the interpretation upon reenactment. 2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 49.09 (Sands 4th ed.1984). There is no evidence to suggest that Congress was concerned with the judicial interpretation of Article 131, UCMJ, established in *Smith*. Congress merely provided an alternate means of presenting evidence and restructured the law of perjury so persons using such false statements would be subject to prosecution. Therefore, I believe Congress did not adopt and approve our superior court's interpretation of Article 131 in *Smith*.

After reviewing the history of the offenses of perjury and false swearing, I am unable to conclude that the President, in defining false swearing, *MCM*, Part IV, ¶ 79(c) (1995 ed.), intended to give an accused greater rights than those conveyed by higher sources. From 1928 until 1969, the *Manuals for Courts-Martial* were unequivocal—false swearing could be committed in a judicial proceeding or course of justice. The same rule applied in the Navy. Although it is clear that the change to the definition of false swearing resulted from the decision of the Court of Military Appeals in *Smith*, there is no evidence to support a conclusion that the President's description of false swearing, *MCM*, Part IV, ¶ 79(c) (1995 ed.), "unambiguously" meant to give an accused greater rights than those conveyed by higher sources. Instead, the evidence supports a finding that the President merely acquiesced to the holding of the *Smith* case and modified the *Manual* to insure those who used it would be aware of the Court of Military Appeals' view of the law. Therefore, whether appellant's conviction is legally sufficient

must rise or fall on the substantive military criminal law, not the *Manual's* explanation.

### C. United States v. Smith and the Preemption Doctrine

In *Smith*, the accused was charged with perjury for testifying falsely at a special court-martial. The Army Board of Review dismissed the perjury charge because the specification failed to adequately state the offense of perjury and the law officer had given an erroneous instruction. However, the Board of Review affirmed a finding of guilty of the lesser included offense of false swearing. On appeal, Smith claimed that false swearing in a judicial proceeding was not an offense. The Court of Military Appeals agreed. *Smith*, 26 C.M.R. at 17.

The Court first noted that "perjury, as defined at common law and under the provisions of Article 131, requires that the false statement be made in a judicial proceeding and be material to the issue, whereas these matters are not part of the offense of false swearing." *Smith*, 26 C.M.R. at 17. It then summarized the holdings of state courts with regard to state laws. The states were divided on whether an accused could be convicted of false swearing in a judicial proceeding. Without any analysis of the military statute, the Court ruled as follows:

> Fundamentally, the decisions turn on the construction of different statutes. Article 131 prohibits false testimony in a "judicial proceeding or in a course of justice." If, therefore, a false statement is made under oath in a judicial proceeding, it must meet the requirements for perjury under the Article or no offense has been committed.

*Smith*, 26 C.M.R. at 18. The Court did not explain which rule of statutory construction required that result, and Judge Latimer, in dissent, could not find one. *Id.* (Latimer, J., dissenting).

Although the majority in *Smith* does not specifically mention the preemption doctrine, it is the only rational theory upon which the Court's decision could be based.

> Simply stated, preemption is the legal concept that where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive

articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element. However, simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way. *United States v. Kick,* 7 M.J. 82, 85 (C.M.A. 1979) (citations omitted).

False swearing is not one of the specifically enumerated offenses in the UCMJ. Instead, it is an offense prosecuted under Article 134, UCMJ, 10 U.S.C. § 934. *See MCM* Part IV, ¶ 79 (1995 ed.). The majority in *Smith* do not cite, and I could not find, anything in the legislative history of the UCMJ, as fractured as it is, to suggest Congress intended, by enacting Article 131, to totally occupy the field of false testimony or presenting false documents in a judicial proceeding or course of justice. Thus, I must conclude that *Smith* was wrongly decided. I realize that just because our superior court may have come to the wrong decision does not permit this Court to overrule it. *United States v. Allbery,* 44 M.J. 226, 228 (1996) (quoting 20 Am.Jur.2d *Courts* § 186 (1965)). Thus, unless we can distinguish the appellant's case, we must follow *Smith. Id.*

### D. Distinguishing United States v. Smith

In *Smith,* the accused testified falsely at a court-martial, while in this case, the appellant swore to the accuracy of a written statement at an Article 32 investigation. "No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made." Article 32(a), UCMJ, 10 U.S.C. § 832(a). As part of that investigation, "full opportunity shall be given to the accused to ... present anything he may desire in his own behalf." Article 32(b), UCMJ. As part of his rule-making function under Article 36(a), UCMJ, the President has interpreted Article 32(b) to permit an accused to "[m]ake a statement in any form." R.C.M. 405(f)(12). The appellant chose to give a sworn statement and prepared the contents of that sworn statement, as well as the acknowledgement, and the jurat that appeared on it. No doubt, the purpose of his swearing to the statement was to give it more credibility in the eyes of the IO.

There may be cogent, even compelling, reasons for limiting the scope of the offense of false swearing when individuals testify under oath and are subject to the rigors of cross-examination with little time to reflect upon their answers. The Supreme Court has suggested that to do so might discourage witnesses from testifying. *See Bronston v. United States,* 409 U.S. 352, 359, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). But, unlike Smith, this appellant did not actually testify and was not subject to cross-examination. The appellant and his counsel had the opportunity to craft the statement to say as little or as much as they wanted, and no more. The prosecution had no opportunity to cross-examine the accused about the statement or its contents. To now suggest the appellant may get the benefit of increased credibility because of the oath, but not be punished for falsely swearing to that document makes no sense. It undercuts the search for truth and makes a mockery out of what is supposed to be a solemn act. *See United States v. Claypool,* 27 C.M.R. 376, 380–81, 1959 WL 3632 (C.M.A.1959) (holding a false statement by a suspect, made under oath to an investigator, constitutes the offense of false swearing).

Although finding the appellant's conviction for false swearing legally insufficient, the majority asserts his conviction would have been valid had he submitted the same document to the IO, but the oath had been administered outside the Article 32 investigation. Such a conclusion makes no sense to me—it is simply form over substance.

Although Article 131, UCMJ, may be somewhat confusing, I am also convinced the appellant could have been prosecuted for, and convicted of, perjury. The appellant took an oath that the statement he was about to make was the truth. The statement he gave the investigating officer was not the truth as to material matters.

I further believe that false swearing *is* a lesser included offense of perjury, notwithstanding the dictum in *Smith*. As the Court noted in *Smith*, "perjury, as defined at common law and under the provisions of Article 131, requires that the false statement be made in a judicial proceeding and be material to the issue, whereas these matters are not part of the offense of false swearing." *Smith*, 26 C.M.R. at 17. This is the classic definition of a lesser included offense. *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (one offense is not a lesser included offense of another unless the elements of the lesser offense are a subset of the elements of the charged offense); *United States v. Foster*, 40 M.J. 140, 142 (C.M.A.1994). Thus, an accused who commits the offense of perjury must have committed each of the elements of false swearing. As there is no evidence to believe Congress meant for the perjury statute to preempt the field, I believe false swearing is a lesser included offense.

### IV. Recommendation

Regardless of the outcome of this case, I recommend the Code Committee seriously consider asking Congress to amend Article 131 to mirror the language contained in the federal perjury statute, with slight modification, as follows:

Any person subject to this chapter ~~Whoever~~ who—

(1) having taken an oath before a competent tribunal, officer, or person, in any ~~case~~ judicial proceeding or course of justice in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, affidavit, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall be punished as a court-martial may direct~~, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States~~.

18 U.S.C. § 1621. Although I believe the appellant's conviction for false swearing is legally sufficient, adoption of these changes would clarify the issue and make clear that presenting such a document in an Article 32 investigation, whether taking the oath before or during the proceeding, amounts to perjury.