# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40005

————————————

## UNITED STATES
*Appellee*

**v.**

## Andrew Y. VEERATHANONGDECH
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 April 2022

————————————

*Military Judge:* Andrew R. Norton.

*Sentence:* Sentence adjudged 25 September 2020 by GCM convened at Travis Air Force Base, California. Sentence entered by military judge on 16 October 2020: Dismissal and confinement for 30 days.

*For Appellant:* Major Alexander A. Navarro, USAF; Captain Alexandra K. Fleszar, USAF; Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY joined. Judge MEGINLEY filed a separate opinion dissenting in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification each of wrongful use of a controlled substance (3,4-methylenedioxymethamphetamine (MDMA)), solicitation of others to provide him a controlled substance (Percocet), and obstruction of justice in violation of Articles 112a and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 934, *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*).[1] The court-martial sentenced Appellant to a dismissal and 30 days of confinement.

On appeal, Appellant raises one issue through his appellate defense counsel: (1) whether the convening authority's failure to take action on the sentence warrants a remand for proper post-trial processing. Appellant personally raises six additional issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we have reworded: (2) whether his conviction for wrongful use of MDMA is legally and factually sufficient; (3) whether his conviction for obstruction of justice is legally and factually sufficient; (4) whether the military judge abused his discretion in denying the Defense's motion to suppress evidence derived from the search and seizure of Appellant's phone; (5) whether the military judge erred in finding the order given to Appellant to biometrically unlock his cell phone with his thumbprint was lawful; (6) whether the military judge erred by allowing a witness to answer a question of law; and (7) whether the military judge erred by failing to instruct the panel that a unanimous verdict was required to convict Appellant. With respect to issues (4), (6),[2] and (7),[3]

---

[1] Appellant was also acquitted of one specification each of conspiracy, wrongful use of cocaine, conduct unbecoming of an officer and a gentleman, and solicitation of others to provide him with a controlled substance (Adderall) in violation of Articles 81, 112a, 133, and 134, UCMJ, 10 U.S.C. §§ 881, 912a, 933, 934, *Manual for Courts-Martial, United States* (2016 ed.).

[2] The record indicates that the witness answered the question in issue at the specific request of Appellant's trial defense counsel. We therefore find that Appellant intentionally waived this issue during trial and therefore conclude it is extinguished and cannot be raised on appeal. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). We have further considered our discretion to exercise our authority to pierce Appellant's waiver to correct a legal error, and we decline to do so. *See United States v. Hardy,* 77 M.J. 438, 442−43 (C.A.A.F. 2018); *United States v. Chin*, 75 M.J. 220, 222−23 (C.A.A.F. 2016) (discussing our ability to correct an error despite an accused's waiver).

[3] *See United States v. Anderson*, No. ACM 39969, 2022 CCA LEXIS 181, at *57 (A.F. Ct. Crim. App. 25 Mar. 2022) (finding unanimous court-martial verdicts not required).

we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

With respect to issue (1), on 5 October 2020 Appellant submitted his clemency matters wherein he requested the convening authority disapprove his remaining period of confinement. In his Decision on Action memorandum, dated 13 October 2020, the convening authority stated that he took "no action" on Appellant's case and that "upon completion of the sentence to confinement" Appellant was "required . . . to take leave pending completion of appellate review." The military judge signed the entry of judgment and entered the adjudged sentence without modification on 16 October 2020. Since all of Appellant's offenses occurred prior to 1 January 2019, we find the convening authority made a procedural error when he failed to take action on the sentence—consistent with our superior court's decision in *United States v. Brubaker-Escobar*, 81 M.J. 471 (C.A.A.F. 2021) (per curiam). However, after testing the error for "material prejudice to a substantial right" of Appellant, we determine that Appellant is not entitled to relief. *See United States v. Alexander,* 61 M.J. 266, 269 (C.A.A.F. 2005).

We are satisfied based on the facts of this case that the convening authority did not intend to provide any relief with regards to the confinement portion of Appellant's sentence and consequently that the convening authority's failure to approve Appellant's sentence is harmless. We base these conclusions on the language used by the convening authority in his Decision on Action memorandum, where he placed Appellant on leave "upon completion" of his term of confinement. Likewise and consistent with our superior court's decision in *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020), we also considered the post-trial declaration submitted to this court on 16 February 2022 by the convening authority's legal advisor, who provided that the convening authority in "taking no action" on Appellant's sentence intended to provide "no relief on the findings or sentence." *See United States v. Harrington*, No. ACM 39825, 2021 CCA LEXIS 524, at *32 (A.F. Ct. Crim. App. 14 Oct. 2021) (unpub. op.) (finding no material prejudice when convening authority's intent to approve sentence was declared on appeal), *pet. granted*, No. 22-0100/AF, 2022 CAAF LEXIS 201 (C.A.A.F. 14 Mar. 2022).

These conclusions are also bolstered by the fact that the convening authority did not have the ability to grant clemency with respect to the punitive discharge, and even if we assume the facts most favorable to Appellant, the convening authority's ability to provide meaningful relief on Appellant's confinement term was limited—in that Appellant only had approximately one week of confinement remaining. Finally, we think it is unlikely that the convening authority would have provided relief from Appellant's already short sentence

to confinement. In testing for prejudice, we have examined the convening authority's decision on action and find Appellant suffered no material prejudice to a substantial right.

With respect to issue (5), as discussed further in the background section below, Air Force Office of Special Investigations (AFOSI) agents ordered Appellant to biometrically unlock his cell phone by using his thumbprint. Appellant argues that he is entitled to relief based on the theory that the military judge erred in finding this order was lawful. The record, however, demonstrates that Appellant did not actually biometrically unlock his cell phone. Instead, the agents seized his locked phone and sent it to the Defense Cyber Crimes Center Cyber Forensics Laboratory (DC3/CFL) where it was subsequently unlocked and analyzed. As a result, the question of whether the initial thumbprint order was lawful is of no moment, because no evidence was obtained as a result of the order. Accordingly, we find no merit to Appellant's argument on this point and determine no relief is warranted.

Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

On 23 April 2018, AFOSI opened an investigation into Appellant after receiving and viewing text messages between Appellant and another military member, Major (Maj) JD, who was a subject of a separate investigation. Those text messages showed that Appellant requested contact information for Maj JD's drug dealer.

Later that day, AFOSI agents brought Appellant into a room for a video recorded interview. AFOSI agents read Appellant his Article 31, UCMJ, 10 U.S.C. § 831, rights, and Appellant requested counsel. The interview was subsequently terminated. AFOSI agents then informed Appellant that they had authorization to seize and search Appellant's cell phone. After some discussion, Appellant refused to biometrically unlock his phone without a direct order from his commander. When the agents left the interview room to seek such an order, Appellant immediately began to aggressively scratch, suck, and rub his thumbs for approximately 15 to 20 minutes. When agents reentered the room with Appellant's commander, Appellant immediately stopped the above-mentioned behavior. However, despite Appellant receiving a direct order from his commander to unlock his phone via thumbprint, AFOSI's multiple attempts to have Appellant unlock his phone still failed due to the distortion of his thumbprint. The agents seized Appellant's still-locked phone.

The agents subsequently sent Appellant's phone to DC3/CFL where digital forensic examiners unlocked and analyzed data on Appellant's phone. Extractions from the phone identified multiple conversations in reference to the charged offenses that took place in April 2018 while Appellant was vacationing with Captain (Capt) DF and Maj TT in Mexico. Specifically, the texts related to Appellant's wrongful use of MDMA and solicitation of Percocet.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant contends that his conviction for wrongfully using MDMA is legally and factually insufficient (issue (2)). Specifically, Appellant contends there was no direct evidence presented that Appellant used MDMA, and that the Government misinterpreted Appellant's "very dark humor" and took his text messages out of context. Additionally, Appellant contends that his conviction for obstruction of justice was legally and factually insufficient (issue (3)). Specifically, Appellant alleges that the Government failed to prove that Appellant intended to impede an investigation. We are not persuaded by Appellant's arguments and determine that no relief is warranted.

### 1. Additional Background

At trial, Maj JD was called as a government witness and testified that Appellant sought the contact information for Maj JD's "plug" before the Mexico trip. Subsequent testimony established that "plug" was a slang term for a drug dealer. A review of the text messages between Appellant and Maj JD showed that both individuals used "street terms" for drugs, such as "8-ball" and "G" which was later used as evidence to show that they were both familiar with drugs and drug transactions. Additionally, in the text messages between Appellant and Maj JD, Appellant discussed wanting to purchase and consume drugs.

At trial, the Government presented testimony from Mr. EH, a digital forensic examiner from DC3/CFL. Mr. EH testified that his review of Appellant's phone uncovered multiple text message exchanges between Appellant and other individuals relating to the charged offenses. On 10 April 2018, Appellant began a group text message with Capt DF and Maj TT by texting, "MEXICO LEAVE APPROVED."[4,5] The messages also showed Appellant, Capt DF, and

---

[4] Appellant had leave scheduled for 16–20 April 2018 in Mexico.

[5] Text message exchanges in this opinion are taken verbatim from evidence in the record of trial and introduced at trial and include misspellings and punctuation errors where not corrected.

Maj TT stayed at a resort in Mexico from 14 to 23 April 2018, and they regularly texted each other throughout their stay.

On 14 April 2018, Appellant told Capt DF and Maj TT that he forgot his Pepcid. Maj TT responded, "It's OK I've got molly." Based on his experience with previous criminal investigations, Mr. EH testified that "molly" typically refers to MDMA. That same night, Appellant discussed using Percocet with Capt DF and Maj TT while they were in Mexico. The following text exchange ensued:

> [Appellant:] How many percs[6] ya got?? Or how much of everything you got as well and how much per. Don't wanna tryna do it all the first couple of days
>
> [Maj TT:] Okay relax[.] Was gonna just gonna take a perc first chill vibes . . . .  I've got about 15 perc I think
>
> . . .
>
> [Appellant:] No[.] Perc[.] Tonight
>
> [Maj TT:] I didn't count
>
> [Appellant:] ?
>
> . . .
>
> [Maj TT:] I'm bringing 3 with[.] Okay ill bring 5
>
> . . .
>
> [Capt DF:] I'm cummin
>
> . . .
>
> [Maj TT:] Fondo and I took in Nashville, good stuff
>
> [Appellant:] Wtf[.] When[?] Gimme[.] Or lemme get another perc[.] Pleas and thank you
>
> [Maj TT:] Alright

The next day, Appellant texted Capt DF and Maj TT, "Wanna roll tonight? After dinna?? Hmmm???" Maj TT responded, "Well never sleep." Appellant said "F[.] Small dose[.] Half dose[.] Or whatevs." Later that night, Maj TT texted Appellant and Capt DF, "......Perc," to which Appellant responded, "Yes[.] Please." The following day, Appellant texted, "Molly tonight?"

---

[6] Mr. EH testified "percs" is common shorthand for the prescription drug "Percocet."

The next day Appellant texted with Capt DF, Maj TT, along with a newly added individual identified as "Azn" about "Molly":

> [Maj TT:] I'm about to take Molly

> [Appellant:] FINALLY[.] hahaha[.] I'll bring the pepcid and speakers . . . . You guys take it already?

> [Maj TT:] Nope[.] Waiting for u

> [Appellant:] Kk, I'm heading there now and telling mags to meet me when she's ready

> [Maj TT:] Good[.] Ok[.] Mines slowly creeping in

> [Appellant:] MINE HIT ME WALKING TO CHECK ON MAGS[.] [S]low creep tho[.] It's getting how ya doin right now[?] I 100% admire how you guys can do daddy duties while F[**]KED up on Molly

> [Azn:] That just means they haven't taken enough molly haha jk

> [Appellant:] Gaga[.] Same as me and I Mexican screamed in front of 100 people

> [Azn:] V, u have taken enough

> [Appellant:] Never enough

Later that night, Maj TT texted the group and said that Appellant "[g]ot smacked by the Molly" and "[t]ripped d[**]k in front of everyone." In response, Appellant admitted he "WAS F[**]KED UP." The next morning, Appellant said he "still ha[d] no appetite" and was "[f]orcing food down." He also said, "I've pooped water twice today, [w]tf was in those pills."

**2. Law**

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes,* 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). While we must find evidence is sufficient beyond a reasonable doubt, it "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000) (citation omitted).

"In resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King,* 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted).

"The test for factual sufficiency 'is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [we are ourselves] 'convinced of the accused's guilt beyond a reasonable doubt.'" *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington,* 57 M.J. at 399).

### 3. Analysis

#### a. Wrongful Use of MDMA

In order for Appellant to be found guilty of wrongful use of a controlled substance in violation of Article 112a, UCMJ, the Government was required to prove beyond a reasonable doubt that (1) Appellant used a controlled substance, specifically MDMA, and (2) his use was wrongful. *See MCM*, pt. IV, ¶ 37.b.(2).

Use "means to inject, ingest, inhale, or otherwise introduce into the human body, any controlled substance." *MCM,* pt. IV, ¶ 37.c.(10). "Knowledge of the presence of the controlled substance is a required component of use." *Id.* Knowledge of the presence of the controlled substance may be inferred from the presence of the substance in the accused's body or from other circumstantial evidence." *Id.* A permissive inference can be sufficient to "satisfy the government's burden of proof as to knowledge." *Id.*

We find the evidence is legally and factually sufficient to support Appellant's conviction. Here, Appellant's text conversations with Capt DF and Maj TT showed that Appellant consumed MDMA during his vacation to Mexico. In particular, the evidence presented at trial established that Appellant was on leave from 14 to 20 April 2018 and that he was in Mexico with Capt DF and Maj TT. Appellant's own leave statement establishes that he was in Mexico during the charged time period, and Maj JD testified that Appellant was seeking contact information for a drug dealer prior to the trip. Additionally, we find pertinent and compelling the constant back-and-forth text messaging that took

place during the entire trip between the Appellant and Capt DF and Maj TT. These messages, when read together, sufficiently demonstrate that they were all in on the illegal drug use together, and Maj JD's testimony tends to corroborate Appellant's general interest in obtaining illicit drugs, if not his intent to use such drugs while in Mexico. The group text messages discussed things like how much and what drugs they had with them, how they were going to space out their drug use, how they compared the effects of the drugs, and also pondered how the drugs impacted normal day-to-day functions (e.g., "daddy duties"). We would not expect this type of exchange except in the case of actual illegal drug use. We also find relevant, as discussed in greater detail below, that an innocent person would not ordinarily feel the need to obstruct justice, by attempting to prevent access to these text messages. Therefore, we find ample indicia of reliability in Appellant's group text messages. *See United States vs. Hansen,* 36 M.J. 599, 607 (A.F.C.M.R. 1992) (factoring surrounding circumstances of an appellant's admission to determine whether there was an indicia of reliability under Mil. R. Evid. 803(24)).

Ultimately, after reviewing the text messages in context, we find they provide sufficient evidence to support that Appellant consumed MDMA while in Mexico. Appellant's own text messages not only discussed the fact that Maj TT had "Molly," but also clearly described that Appellant consumed, and shortly thereafter felt the effects of, the drug, stating, *inter alia*, "MINE HIT ME WALKING TO CHECK ON MAGS[.] [S]low creep tho[.] It's getting how ya doing right now." Furthermore, Appellant's text message the next morning where he stated "Wtf was in those pills" confirmed that he had in fact been under the effects of "Molly" the night before.

We are not persuaded by Appellant's argument that he could have been under the influence of any number of intoxicants other than "Molly" including tequila, Adderall, or Percocet, as his argument fails to recognize the fact that Appellant specifically mentioned "Molly" and taking pills the night prior, and that the following day his friend, Maj TT, described Appellant as getting "smacked by the Molly" and "[t]rip[ping] d[**]k in front of everyone." Presumably, had Appellant not been "smacked by the Molly" he would have denied or corrected Maj TT in the group chat. Instead, Appellant affirmed Maj TT's statement by responding with, "Hahaaa, I WAS F[**]KED UP."

Finally, as to Appellant's argument concerning the lack of direct evidence that he consumed MDMA, we find that the Government can meet its burden of proof with circumstantial evidence. *See King,* 78 M.J. at 221; *see also United States v. Long,* 81 M.J. 362, 368 (C.A.A.F. 2021) (holding that the findings at trial "may be based on direct or circumstantial evidence"). We also note that "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence." *Holland v. United States,* 348 U.S. 121, 140 (1954). The trier of fact is

free "to draw reasonable inferences from basic facts to ultimate facts." *Long,* 81 M.J. at 368 (citation omitted).

Accordingly, in assessing the legal sufficiency, we are limited to the evidence produced at trial and are required to consider it in the light most favorable to the Government. We conclude that a rational factfinder could have found beyond a reasonable doubt all of the essential elements of Appellant's convicted offense. Furthermore, in assessing factual sufficiency, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's conviction for wrongful use of MDMA is legally and factually sufficient.

### b. Obstruction of Justice

In order for Appellant to be found guilty of obstruction of justice, in violation of Article 134, UCMJ, the Government must prove beyond a reasonable doubt four elements: (1) Appellant did a certain act; (2) Appellant did so in a case of a certain person against whom Appellant had reason to believe there were or would be criminal proceedings pending; (3) the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and (4) under the circumstances, Appellant's conduct was to the prejudice of good order and discipline in the armed forces. *See MCM,* pt. IV, ¶ 96.b.

As charged, Specification 3 of Charge IV alleged that, on or about 23 April 2018, Appellant wrongfully endeavored to impede an investigation in his own case, by sucking and rubbing his thumb to prevent law enforcement officers from using his thumbprint to unlock his cellular phone, and that said conduct was to the prejudice of good order and discipline in the armed forces.

"This offense may be based on conduct that occurred before preferral of charges." *MCM,* pt. IV, ¶ 96.c. "Actual obstruction of justice is not an element of this offense." *Id.* The *Manual for Courts-Martial* also provides:

> "Examples of obstruction of justice include . . . preventing communication of information relating to a violation of any criminal statute of the United States to a person authorized by a department, agency, or armed force of the United States to conduct or engage in investigations or prosecutions of such offenses; or endeavoring to do so."

*MCM,* pt. IV, ¶ 96.c.

Appellant contends the Government failed to prove that Appellant had the specific intent to prevent law enforcement officers from using his thumbprint to unlock his phone when he sucked and rubbed his thumbs. We disagree with

Appellant's argument and find that the Government presented sufficient circumstantial evidence to show the requisite intent for obstruction of justice. *See United States v. Finsel,* 36 M.J. 441 (C.M.A. 1993) (holding the totality of the circumstances was sufficient for finding, beyond a reasonable doubt, the requisite intent for an obstruction of justice offense). Here the Government presented video footage of Appellant's behavior while at AFOSI. This video showed Appellant's conduct both before AFOSI directed him to biometrically unlock his phone with his thumbs—when he was not rubbing, sucking, or scratching his thumbs—and Appellant's conduct after AFOSI agents left the interview room when Appellant immediately and repeatedly rubbed, sucked, and scratched his thumbs for 15 to 20 minutes. We find this stark contrast in Appellant's behavior is a sufficient basis for a reasonable factfinder to conclude that Appellant began to rub and suck his thumbs for the sole purpose of preventing AFOSI from getting a clear thumbprint to biometrically unlock the phone. Importantly, Appellant had a strong motive to prevent access to his phone, considering the phone contained numerous incriminating text messages between Appellant and his fellow drug users, and documented his drug-filled vacation from start to finish.

Appellant also suggests the Government did not prove beyond a reasonable doubt that Appellant tried to impede AFOSI's access to his phone by "sucking and rubbing" his thumb, because trial counsel repeatedly argued that Appellant "scraped" his thumbs. But Appellant's argument misses the mark for two reasons. First, trial counsel's argument is not evidence. *See United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017). Second, as mentioned above, the video evidence of Appellant's behavior while at AFOSI was compelling evidence that demonstrated Appellant sucked and rubbed his thumbs in furtherance of his attempt to obstruct justice. The members saw this evidence, and the video is part of the record which we ourselves have reviewed.

Considering only the evidence produced at trial, in the light most favorable to the Government, we conclude that a rational factfinder could have found beyond a reasonable doubt all essential elements for obstruction of justice. Furthermore, after weighing all evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's conviction for obstruction of justice is both legally and factually sufficient.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d), *Manual for Courts-*

*Martial, United States* (2019 ed.). Accordingly, the findings and the sentence are **AFFIRMED**.


MEGINLEY, Judge (dissenting in the result):

Appellant filed a pretrial motion requesting the military judge instruct the members that their verdict be unanimous; this motion was denied. For the reasons I articulated in *United States v. Westcott*, No. ACM 39936, 2022 CCA LEXIS 156 (A.F. Ct. Crim. App. 17 Mar. 2022) (Meginley, J., dissenting) (unpub. op.), I would find Appellant was denied equal protection under the law and would set aside the findings without prejudice. Notwithstanding this, I agree with the majority's resolution of issues (1)–(6).


FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court