# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38891**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Vashaun M. BLANKS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 March 2017

———————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Bad-conduct discharge, confinement for 30 days, forfeiture of $1,546.00 pay per months for 2 months, and reduction to E-1. Sentence adjudged 15 May 2015 by GCM convened at Royal Air Force Mildenhall, United Kingdom.

*For Appellant:* Major Isaac C. Kennen, USAF; Major Thomas A. Smith, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Major G. Matt Osborn, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges*

Senior Judge J. BROWN delivered the opinion of the court, in which Chief Judge DREW and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

J. BROWN, Senior Judge:

Appellant was tried at a general court-martial composed of officer and enlisted members. Consistent with his pleas, he was found guilty of three false statements, in violation of Article 107, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 907. Contrary to his pleas, Appellant was also found guilty of negligent dereliction of duty in failing to provide adequate support to his spouse,[1] a fourth false official statement by submitting a false housing allowance form, larceny of military property, and obstruction of justice, in violation of Articles 92, 107, 121, and 134, UCMJ, 10 U.S.C. §§ 892, 907, 921, 934.[2] The members sentenced Appellant to a bad-conduct discharge, 30 days of confinement, forfeiture of $1,546.00 per month for two months, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant raises the following errors: (1) whether the military judge abused his discretion in failing to suppress a confession based upon an unambiguous invocation of counsel, (2) whether the military judge erred in granting a challenge for cause, (3) whether the military judge erred in excluding certain evidence, (4) whether the evidence is factually sufficient to prove Appellant obtained basic allowance for housing (BAH) by false pretenses, (5) whether the military judged erred in limiting the Defense's sentencing argument, and (6) whether the sentence is inappropriately severe.[3] Finding no error that prejudiced a material right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was a Senior Airman, and at the time of his trial, he had more than seven years of military service. The incidents that resulted in his trial began three and a half years earlier in 2011 when Appellant received an unaccompanied assignment to Korea. Prior to leaving for the one-year unaccompanied assignment, he married his girlfriend, Mrs. MA. His new wife remained stateside and moved into her new mother-in-law's house.

As Appellant's wife remained stateside, he was potentially eligible to receive an additional housing allowance, in addition to his own housing allowance. To receive this additional housing allowance, the Air Force required Appellant to provide the finance office with a form that identified his wife's

---

[1] Appellant was found not guilty of the greater offense of willful dereliction of duty.

[2] Appellant was also found not guilty of a larceny allegation from a prior duty station and a false official statement associated with that larceny allegation.

[3] Appellant also alleges that the military judge's instruction regarding beyond a reasonable doubt was error. Appellant did not object to this instruction at trial. Our superior court has recently resolved this issue adverse to Appellant. *See United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017) (finding no plain error where a military judge provided the instruction without defense objection).

address and included a certification from Appellant that he was providing "adequate support" to his spouse. Upon signing the documentation, Appellant began receiving an additional housing allowance that was computed based upon where Appellant said that his wife was residing.

Regarding the spousal support, Appellant's mother testified that, while Mrs. MA lived with her, Appellant paid the electric bill for the house and sent money to his mother on a monthly basis to provide to his wife. His wife also used Appellant's vehicle and his mother provided food and groceries for the entire household. However, Appellant's and his wife's marital relationship became strained. After approximately eight months, Mrs. MA moved out of her mother-in-law's house, leaving Appellant's vehicle behind. Though documented support was scarce, especially after she left her mother-in-law's house, there was evidence that Appellant provided his wife with $200 for a new phone. Nevertheless, Appellant continued to receive the additional housing allowance for his wife throughout his entire assignment in Korea.[4]

In the summer of 2012, after a year in Korea, Appellant was reassigned to Royal Air Force (RAF) Mildenhall, United Kingdom. Upon arriving at his new base, Appellant completed and submitted a form again stating that he provided "adequate support" for his wife.[5] With submission of this paperwork, Appellant continued to receive the additional housing allowance for his wife.

Appellant and his wife maintained limited contact until November 2012. The evidence supports that, once in the United Kingdom, Appellant did not provide the additional housing allowance, or any financial support, to his wife. Though they remained married, their relationship was effectively over.

At some point, Appellant met and began an intimate relationship with another woman in the United Kingdom. Though there was some evidence that he attempted to get a divorce from his wife, he remained legally married to his wife and continued to receive the additional housing allowance.

In the summer of 2014, the Department of Defense directed finance offices to revalidate the dependent information for all military members. This required all military members who claimed dependents to bring documentation to the finance office and to recertify the accuracy of member's entitlements. As part of this recertification, Appellant signed the same document that he did when he arrived, recertifying that he was still married to Mrs. MA and

---

[4] Appellant was acquitted of stealing the housing allowance while in Korea.

[5] Appellant's statement that he provided "adequate support" to his spouse formed the basis for the false official statement allegation that resulted in an acquittal.

that he was providing adequate support to her. His claim that he was providing adequate support was the basis for one of his false official statement convictions.

With the receipt of Appellant's recertification, the Government continued to provide the additional dependent housing allowance to Appellant. His receipt of additional dependent housing allowance while in the United Kingdom formed the basis for the larceny of military property conviction. That specification, as alleged, spanned the entire period of time that Appellant was stationed in the United Kingdom.

Appellant's new relationship with his girlfriend continued, and his girlfriend became pregnant. Shortly before the birth of their child, Appellant approached leadership to request paternity leave. Appellant learned from his supervisor, however, that the Air Force only provided paternity leave if the mother was the member's legal spouse. To get his paternity leave request approved, he told his first sergeant that his girlfriend was actually his wife. To explain the different names, he told his first sergeant that his wife went by two different names. He repeated and expanded upon this lie to both his commander and security forces investigators. These lies about his wife and girlfriend—that he made to his first sergeant, his commander, and criminal investigators—constituted the three specifications of false official statements that Appellant pleaded guilty to at trial.

Once Appellant was under investigation, he contacted his wife's current boyfriend, and requested that, if investigators contacted them, both his wife and her boyfriend claim that they did not know who Appellant was. This conduct was the basis for the obstruction of justice charge.

In addition, though charged with willful dereliction of duty for failing to provide adequate support to his wife over a time period that spanned his assignments to both Korea and the United Kingdom, the members instead found Appellant guilty of the lesser-included offense of negligent dereliction of duty.[6]

---

[6] Neither the Government nor the Defense requested that the military judge instruct the members to modify the alleged timeframe if the members believed a narrower timeframe was appropriate. Rather, the Government argued that, as long as the members found that Appellant was derelict in his duties at any time in the asserted timeframe, the members should return a finding of guilty to the specification. The Defense did not object or request that the members be instructed otherwise.

## II. DISCUSSION

### A. Invocation of Counsel

Appellant argues that the military judge abused his discretion when he failed to suppress Appellant's statements to investigators. Appellant asserts that, after waiving his right to counsel and his right to remain silent, he subsequently unambiguously requested counsel and that request was not honored by the investigators. We agree that Appellant unambiguously invoked counsel and the military judge abused his discretion by failing to suppress a portion of the interview. Despite this, however, we conclude beyond a reasonable doubt that admission of this portion of the interview did not prejudice Appellant.

This court reviews a military judge's ruling on a motion to suppress for abuse of discretion. *United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F 2013); *see also United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *White*, 69 M.J. at 239 (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). As such, the findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. *Cote*, 72 M.J. at 44. "On questions of fact, [we ask] whether the decision is reasonable; on questions of law, [we ask] whether the decision is correct." *United States v. Baldwin*, 54 M.J. 551, 553 (A.F. Ct. Crim. App. 2000) (citation omitted), *aff'd,* 54 M.J. 464 (C.A.A.F. 2001).

Invocation of the right to counsel "requires, at a minimum, some statement by an accused that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984). Statements subsequent to a clear invocation of counsel may not be considered in determining whether the invocation was ambiguous. *Id.* Reviewing courts may, however, consider statements and events immediately preceding the invocation, as well as "nuances inherent in the request itself." *Id.* at 99; *United States v. Delarosa*, 67 M.J. 318, 324 (C.A.A.F. 2009).

The determination of whether an invocation is unambiguous (requiring the agents to immediately terminate the questioning) or ambiguous (permitting further clarifying questions) is an objective inquiry based upon how a "reasonable investigator" would view the comments. *Davis v. United States*,

512 U.S. 452, 459 (1994); *see also United States v. Lovely*, 73 M.J. 658, 672 (A.F. Ct. Crim. App. 2014). If an accused is indecisive in his request, questions regarding whether he did or did not waive counsel "must necessarily be left to the judgment of the interviewing Agent." *Miranda v. Arizona*, 384 U.S. 436, 485 (1966).

Once an accused unambiguously requests counsel, "courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95 (citing *Edwards v. Arizona*, 451 U.S. 477, 485–86 n.9 (1981)).

Prior to raising the motion to suppress, Appellant pleaded guilty to making false official statements to his first sergeant, his commander, and security forces investigators about the identity of his girlfriend.[7] These statements centered around Appellant's attempts to mislead his leadership and investigators into believing that his wife and girlfriend, though they had different names, were actually the same person. As Appellant had previously pleaded guilty to the false statements made to investigators prior to the motion to suppress, whether these statements were false was no longer at issue when the Defense raised the motion to suppress.

There were no witnesses presented by the Government or the Defense for the motion. The basis of the motion was solely the videotaped interview.

At the beginning of the videotaped interview, Appellant was informed that they were investigating BAH fraud, adultery, and false statement. Appellant made a knowing and voluntary waiver of his right to counsel and his right to remain silent, and agreed to answer the investigator's questions. That this was a knowing and voluntary waiver of his rights is not contested by the Defense, either at trial or on appeal.

The first portion of the interview, prior to invocation of counsel, consisted of Appellant's attempts to persuade the investigators that his pregnant girlfriend was actually his wife, that his wife traveled to the United Kingdom in

---

[7] Prior to raising the motion to suppress, the Defense entered pleas and failed to object to admission of a videotape of the interview that forms the basis of this motion to suppress. Only once the videotape was played for the members did the Defense raise a motion to suppress the final 15-minutes of the videotaped statement because Appellant invoked his right to counsel during the interview. Though the motion was untimely, the military judge allowed, and the Government concurred with, the Defense raising the belated the motion to suppress. As the military judge permitted and ruled on the untimely motion, the issue was preserved for appeal.

2014, and that it was his wife who gave birth to his child in August 2014. Appellant also claimed that he financially supported his wife and provided documents that purportedly evidenced this, though he did not allow investigators to copy any of the documents.

After approximately 45 minutes, the following exchange occurred:

> *Investigator:* We've been down this road right here before. Now that we've cleared all of this stuff up, do you have any questions or are you still in the gray about anything?
>
> *Appellant:* No, but if there was anything else then I want to— I'm going to bring my lawyer in for everything.
>
> *Investigator:* The next thing we're going to do is ask for a statement from you. Honestly, the same thing we talked about in here. It would be very beneficial if you done [sic] one now that we've cleared all of this up, but once again it's entirely up to you . . . what you want to do . . . .
>
> *Appellant:* Yeah, I just want to wait for my lawyer, because I don't want to do any statements or anything until she's here and whatnot; because like I said the last time was just a bad experience. I don't know if I typed something that got mixed up or what happened, but yeah, I just don't want to deal with that again.
>
> *Investigator:* That makes sense man.[8]

The investigators then stopped questioning Appellant. After discussing how Appellant would get back to work, the investigators left the room. Appellant was left in the room alone for a little more than an hour.

The investigators then reentered the room and told Appellant that they had more questions. The investigators then asked Appellant when his wife supposedly arrived in the United Kingdom, how she was picked up from the airport, and where she went when she arrived. This portion of the interview, lasting nine minutes, centered on Appellant's claim that his wife and pregnant girlfriend were actually the same person.

---

[8] There are slight differences between the videotaped interview and the findings of fact from the military judge. Though the differences are inconsequential to the analysis, we adopt the military judge's findings of fact as to this invocation only to the extent that it mirrors what we have set forward in this opinion.

### 1. "[I]f there was anything else then . . . I'm going to bring my lawyer in for everything."

As to the first statement invoking counsel, the military judge reasoned:

> At the end of that first part of the interview security forces asked him if he had any questions or if he was confused. The accused set forth the precondition; he said, "If there's anything else I'm going to bring my lawyer into it." The court finds that this is ambiguous at best. "If" was a condition present; it was not an indication at that point of his desire to invoke his rights to counsel. He then indicated "Anything else." The court finds that this is ambiguous as to whether these are different matters, that this is a follow-up to the first questions; it certainly was not a clear indication by the accused of his desire not to answer questions, rather to have his lawyer present. Further the accused indicates that he was going to bring his lawyer into this, which is forward, prospective, plan to invoke his rights or have his lawyer at some future point. The court finds that at that stage the accused had not clearly and unequivocally requested a lawyer.

As to this first statement, we find that the military judge did not abuse his discretion. We agree with the military judge that this statement was a conditional statement referencing a decision to be made in the future and did not therefore constitute an unequivocal invocation of Appellant's right to counsel.

### 2. "I just want to wait for my lawyer because I don't want to do any statements or anything until she's here . . . ."

We turn then, to the second invocation of Appellant's right to counsel. As with the immediately preceding invocation, the military judge concluded that the second statement was not an unequivocal request for counsel. The military judge's rationale focused on the purported ambiguity of the invocation based on his conclusion that it only referenced a written statement rather than a request for counsel for all future questions.

> [As the prior statement was not an unequivocal request for counsel,] security forces were not precluded from asking for a written statement. He was then provided that opportunity to provide a statement; in context again it is clear from the situation that it is a request for a written statement. The accused's response indicates that he understood it as same. The accused did not want to provide a written, typed statement without a lawyer. Again the court finds that this was not an invocation of

rights, or the accused's expressed desire to only deal with secu-
rity forces through his counsel. This was limited solely to the
provision of a written statement.

It is as to this second invocation that we part ways with the military
judge. We find the military judge abused his discretion when he concluded
this second statement was not an unequivocal invocation of counsel. The mili-
tary judge abused his discretion in concluding this was an ambiguous invoca-
tion for two reasons.

First, the meaning of Appellant's words, in context, was clear. Appellant
wanted an attorney for "everything," and he did not want to do "statements
or anything" without his lawyer. Appellant's response, by its very terms, was
not limited to written statements. Appellant specifically referenced "any
statements," referring to more than just one type of statement. He also ex-
panded his request for counsel beyond just providing statements to "any-
thing."

If there was any doubt as to the reasonable meaning of that response, it
should have been put to rest when considered in the context of Appellant's
immediately preceding statement that "if" there was anything else, he want-
ed his attorney for "everything." When the investigators then asked for some-
thing else—a written statement—Appellant followed through with what he
just told the investigators he would do. He invoked his right to counsel for
everything, or as he specifically told the investigators, for "any statements or
anything." Viewing these two statements together, Appellant's response was
an unequivocal request for counsel as to anything and everything the investi-
gators wanted to ask him. There was nothing ambiguous about Appellant's
request.

Second, the lack of ambiguity was also evidenced by the investigator's re-
sponse to the invocation. The military judge, however, failed to acknowledge
in his analysis the actions and perceptions of the investigators to the invoca-
tion at issue.[9] The investigators immediately stopped the questioning, turned
the discussion to the administrative aspects of ending the interview, and left
the interview room for more than an hour. As evidenced by these actions,
they were not confused as to the meaning of his response. There was no clari-

---

[9] The military judge lacked testimony from the investigators on this point as the
Government, despite having the burden of proof, elected not to present it. Though the
standard is an objective/reasonableness test—not subjective—their testimony may
have been helpful to assess their subjective beliefs and surrounding circumstances
and thus whether those beliefs were objectively reasonable.

fication needed, and the investigators did not request one. The military judge omitted this evidence entirely; instead, he focused on how the investigators responded to Appellant's *other* requests for counsel both before and after this invocation—apparently reasoning that, if the investigators honored other unambiguous requests, it was more likely they would have honored a similar request here. This omission is odd as the investigator's reactions—especially absent any testimony from the investigators regarding their belief and basis for that belief—was a crucial piece of evidence before the military judge. Accordingly, while it is helpful to consider the entirety of the interview prior to the invocation, the military judge erred in failing to consider the investigator's response to the invocation of counsel at issue in the suppression motion.

For these reasons, and having reviewed the entirety of the interview ourselves, we conclude that a reasonable investigator would view Appellant's second statement, especially when paired with the first statement, as an unambiguous invocation of counsel. The military judge abused his discretion in concluding otherwise and in failing to suppress the subsequent portions of the interview.

### 3. Prejudice

Though we have concluded the military judge erred in failing to suppress the last 15 minutes of the interview, that does not end our analysis. The next question is whether this constitutional error was harmless beyond a reasonable doubt such that we need not set aside Appellant's convictions.[10] *See United States v. Mitchell*, 51 M.J. 234, 240 (C.A.A.F. 1999). The Supreme Court has placed the burden on the Government "to prove beyond a reasonable doubt that" inadmissible evidence obtained from a violation of the Constitution "did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). We conclude that that the Government has met their burden here.

The portion of the interview that the military judge erroneously admitted concerned Appellant's false claims that his pregnant girlfriend was actually his wife, that his wife traveled to the United Kingdom, and that the confusion was caused because his wife had two names. This portion of the interview focused on these lies, not whether Appellant was providing support. Furthermore, Appellant did not make any new admissions during this portion of the interview but merely continued the lies he began in the first portion of the

---

[10] Appellant's counsel fails to articulate in pleadings to this court how Appellant was purportedly prejudiced by admission of the last portion of the interview. Rather, they merely state, in a conclusory sentence, that the Government has failed their burden.

interview. The issue of support came up in the second portion of the interview in only an extremely limited manner.

> *Appellant*: So what . . . is it that you need?
>
> *Investigator*: Financial records to show the BAH stuff, and I think that's it man. Because like I said that other stuff, that's not panning out at all.
>
> *Appellant*: Okay.
>
> . . . .
>
> *Appellant*: I'll figure it all—I actually tried getting my Discover card information while you were out so I can show you that, but I can't remember the password for it—it's either the password or—I don't know what it is, or the username.
>
> *Investigator*: That's fine.
>
> *Appellant*: I'll try to get you whatever I can.

The interview then ended.

The military judge, however, instructed the members in a manner that minimized the impact of this portion of the interview. The military judge, with the agreement of the Defense, instructed the members as follows:

> [T]hrough the testimony of [the investigator], and then again through the end of that interview, there was some hint or suggestion that [Appellant] was going to provide some further documents; and . . . those documents may or may not have ever come across your desk.
>
> He is again under no obligation or compulsion to bring anything to your attention. He doesn't have to provide documents to the police; he didn't have to talk to them. To the extent he talked to them you consider what he said; fine, great. But he's under no obligation of anything, and you will not infer anything adverse to him because those documents may or may not have ever been provided to law enforcement.
>
> So again you won't get any arguments from counsel on that, and you'll get further instructions when I give you those. But before you even think about that you just put it out of your mind, that's not the issue. You deal with the evidence in front of you, not anything that may or may not have ever been presented to you. That's not how the law works; and if you have any questions about that later on you certainly are free to talk to me about it; but I will give you further instructions.

The members did not have any questions about this instruction and neither counsel referred to Appellant's unwillingness to provide the requested documents as a basis to find him guilty or to impose a greater sentence.

In short, the erroneously admitted portion of the interview was merely a continuation of Appellant's lies that were made in the first portion of the interview, Appellant had previously pleaded guilty to those lies when the videotape was admitted and played for the members, and counsel did not rely or reference any specific statements from that portion of the interview in their findings or sentencing arguments. Consequently, we conclude that the Government has demonstrated beyond a reasonable doubt that the admission of this evidence did not contribute to the verdict or the sentence in this case. Appellant is not entitled to relief as to this issue.

## B. Challenge for Cause

Appellant alleges it was error for the military judge to grant the Government's challenge for cause against Major (Maj) GC and Senior Master Sergeant (SMSgt) CM—challenges the Defense affirmatively concurred with—because the Government failed to articulate on the record their rationale for the challenge. Appellant appears to argue that, regardless of whether the basis for the challenge is otherwise clear from the record, it is still error to grant a challenge absent a detailed explanation on the record. We find that Appellant affirmatively waived this issue when the Defense agreed with the Government that the member should be removed for cause.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)). R.C.M. 912(f)(3) provides that "the party making a challenge shall state the grounds for it."

During voir dire, Major GC told the court that he recognized Appellant, though he was not sure from where, and that he would be more likely to find a senior ranking witness more credible because they were screened and vetted by the Air Force before they assumed that position. SMSgt CM told the court, among other things, that he personally received dual housing allowances while he was in Korea and his wife remained in the states, that he recalled his responsibilities and obligations regarding receipt of that additional money, and that he understood he had a military obligation to provide support for his wife.

At the conclusion of voir dire, the trial counsel informed the military judge that they challenged for cause both Maj GC and SMSgt CM. The military judge then asked the Defense if they opposed the challenges for cause, to which they responded, "No, Sir." The military judge then summarily granted trial counsel's challenge for cause against both Maj GC and SMSgt CM.

We conclude that Appellant affirmatively waived this issue when he conceded, on the record, that the military judge should grant the Government's challenges for cause. "[W]aiver is a deliberate decision not to present a ground for relief that might be available in law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). "[W]hen an error is waived, . . . the result is that there is no error at all . . . ." *United States v. Chin*, 75 M.J. 220, 222 (C.A.A.F. 2016) (quoting *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999)). The Defense affirmatively declined to oppose the Government's challenges. There is thus no error for us to review.[11]

## C. Military Judge's Exclusion of Testimony

Appellant asserts that the military judge abused his discretion by prohibiting Appellant's mother and sister from testifying that his spouse, Mrs. MA, stole items from his mother's house while she lived with them. Mrs. MA purportedly lived with Appellant's mother during the first eight months of Appellant's assignment to Korea. We conclude that the military judge did not abuse his discretion in excluding this evidence.

We typically exercise great restraint in reviewing a military judge's decision to admit or exclude evidence under Military Rule of Evidence (Mil. R. Evid.) 403. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). A military judge may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mil. R. Evid. 403. When a military judge conducts a proper balancing test under this rule, the ruling

---

[11] We recognize that this court is permitted, under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to review issues affirmatively waived by an appellant at trial. *United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016) (a court of criminal appeals may, on its own initiative, determine whether to leave a trial-stage waiver of an error intact). Despite this authority, we will only ignore an affirmative waiver in the most deserving cases. This is not such a case. Appellant asserts neither prejudice nor the absence of implied bias on behalf of either member. Furthermore, from a review of the record, it is apparent that both the parties and the military judge all concluded that the members' responses and demeanor provided a sufficient basis to grant the challenges.

will not be overturned unless there is a "clear abuse of discretion." *Id.* (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)).

Immediately before the Defense began its case by calling Appellant's mother and sister, the Government moved to preclude the witnesses from testifying that, while Mrs. MA resided with them, she was a thief and a slob. The Defense argued that this portion of their anticipated testimony was admissible for two reasons: (1) the similarities and consistency between these two witnesses made their overall testimony, to include how Appellant supported his wife while Appellant was in Korea, more credible; and (2) the items Mrs. MA purportedly stole from the house could be considered adequate support.

The military judge granted the motion in limine in part, allowing the witnesses to describe how messy Mrs. MA was while with Appellant's mother but prohibiting them from labeling Mrs. MA a thief. The military judge explained:

> Considering the proffers of the parties I'll allow defense counsel to ask questions about their interactions with her, and the time she spent at the house, whether she was employed or not employed; I'll even allow you to ask whether she was a tidy person or not. I will not allow you to ask about accusations of theft. The court finds they are not particularly useful as to anything about the credibility of [Mrs. MA]. There's no evidence before this court to support the proposition that these are crimes of *Crimen Falsi* that would go to her credibility.
>
> On balance, considering a 403 balancing test, I do not find that the limited probative value that somehow this would corroborate each witness's testimony is sufficient, and it is substantially outweighed by the confusion of the issues, by the danger of unfair prejudice, in that it becomes a matter of a trial within a trial. The members have heard the deposition of [Mrs. MA], they can consider her statements; and to the extent that they are contradicted by other evidence they can make a determination as to her credibility.
>
> Getting into issues of whether she is or is not a thief is of no value from the court's perspective.

During trial counsel's cross-examination of Appellant's mother, Appellant's mother testified that Appellant continued paying her electricity bill even after Mrs. MA moved out in March 2012. His mother then explained that she had been instructed not to explain to the members why Appellant kept paying the bill despite his wife moving out.

Defense counsel asked the military judge to permit him to clarify, outside the presence of the members, why Appellant kept paying the electricity bill. Once the members had departed, she testified, "[Appellant] owes myself, as well as his sister's [sic] money, because of all of the items that [Mrs. MA] stole from my home. So the easiest way to do that was to have him keep maintaining some part of a bill, something; a way to give me money every month."

The defense counsel then told the military judge that he did not want to elicit that response in front of the members. Instead, the defense counsel's only concern was that the members not view the response as a refusal to answer the question. To avoid this concern, the Defense requested that the military judge properly instruct the members and the military judge agreed to do so.

We conclude that the military judge did not abuse his discretion in prohibiting Appellant's mother and sister from testifying about their personal beliefs that Mrs. MA was a thief. Notably, the military judge never prohibited Appellant from introducing evidence or testimony regarding support purportedly provided to Mrs. MA by either Appellant or his mother. Appellant's mother testified that Appellant not only paid her electricity bills, but also provided cash to his wife and allowed his wife to use Appellant's vehicle. As such, the witnesses were permitted to testify about relevant information pertaining to whether Appellant was supporting, both directly and indirectly, his wife while he was stationed in Korea.

What was objectionable, and what the military judge ultimately ruled upon, was that these witnesses were not permitted to testify about their belief that Mrs. MA was a thief. That these witnesses personally believed Mrs. MA stole items from the house had little to no relevance to the ultimate question of whether Appellant provided support to his wife. Accordingly, the military judge's ruling focused on the *characterization* of Mrs. MA as a thief. Extrinsic evidence, other than a criminal conviction, is not admissible to prove specific instances of Mrs. MA's conduct in order to attack her character for truthfulness. Mil. R. Evid. 608(b). Testimony that Mrs. MA stole property from Appellant's mother was an improper attempt to impeach Mrs. MA by extrinsic evidence. The military judge's ruling was proper, and we agree with the military judge's conclusion that the admission of such testimony under these particular facts had limited probative value and, to the extent there was any value, it was substantially outweighed by the potential of member confusion, unfair prejudice, and unnecessarily creating a "trial within a trial." We reject this assignment of error.

**D. Factual Sufficiency**

Appellant next argues that the evidence was factually insufficient to show that Appellant made a false official statement in August 2014 when he certified that he provided "adequate support" to his dependents. Appellant further argues that, if that offense was factually insufficient, then the larceny of housing allowances offense must also be factually insufficient since the larceny was accomplished through that purportedly intentionally false certification. In short, if there was no false statement, there was no larceny by false pretenses. We are unpersuaded by Appellant's arguments and find both offenses factually sufficient.

We review issues of factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While we must find that the evidence was sufficient beyond a reasonable doubt, it "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000).

**1. False Official Statement—Housing Allowance Certification**

The military judge properly instructed the members that, to support a conviction for false official statement under Article 107, UCMJ, the Prosecution must prove beyond a reasonable doubt that:

> (1) [Appellant] signed an AF Form 594, application to start/stop or change basic allowance for quarters, BAQ or dependency redetermination;

> (2) That such record was false, in that [Appellant] certified that he provided adequate financial support to his dependent spouse, [Mrs. MA], when he had not provided adequate financial support to his dependent spouse, [Mrs. MA], from on or about 12 July 2012 to on or about 6 August 2014;

> (3) That the accused knew the record was false at the time he signed it;

> (4) That the false record was made with the intent to deceive.

16

As to this offense, the Defense's argument at trial, as well as on appeal, primarily relies on the assertion that the Government failed to prove beyond a reasonable doubt that Appellant had specific knowledge of how much support constituted adequate support. If Appellant did not know the exact meaning of adequate support, the Defense argues his assertion that he was providing adequate support could not have been intentionally false or made with the intent to deceive. In support of that argument, the Defense highlighted that adequate support was not defined on the form, its meaning was never defined or briefed to Appellant, and different military regulations define adequate support in different ways.[12] We are not persuaded.

By the time Appellant submitted this documentation to the finance office, he had received additional "spousal" housing allowance for the prior three years. He received these additional allowances because he previously claimed he was providing adequate support to her and provided information to authorities where she was purportedly residing stateside. Upon arriving in the United Kingdom, however, Appellant's relationship was on its last legs, and within a couple of months they stopped communicating almost completely. Appellant stopped providing any financial support to his wife. By the time he signed the certification in 2014, approximately two years had passed since he had provided financial support to his wife. Nevertheless, he claimed he was still providing adequate support, and listed his wife's residence as his mother's house—though he knew that she had not lived there for more than two years. Even assuming Appellant was ignorant as to exactly how much support was considered "adequate," there is a huge gulf between some support and no support whatsoever. The evidence supported that he provided no support whatsoever during the several years he was assigned in the United Kingdom.

This was neither a mistake nor a result of confusion. He was receiving additional housing allowance for submitting this false document. When he was finally confronted by investigators, he concocted a web of lies where he masqueraded his girlfriend as his wife. As part of his plan, he even showed investigators fabricated documents to support his false claims of supporting his wife financially. He also contacted his wife and her then-boyfriend to per-

---

[12] As to the allegations regarding the receipt of spousal housing allowance in Korea, there was also evidence that Appellant provided some amount of support to his wife, to include money, use of his vehicle, and providing her room and board at his mother's house for eight months. The members acquitted him of the larceny of housing allowances while he was in Korea. They also acquitted him of willfully being derelict in his duty to provide adequate support for his wife, finding him guilty of the lesser-included offense of negligent dereliction of duty.

suade them to lie if contacted by investigators. These actions show consciousness of guilt.

With the overwhelming evidence presented at trial, we have little difficulty concluding that Appellant's August 2014 submission to the finance office constituted a false official statement as alleged. We conclude, after making allowances for not personally observing the witnesses, that Appellant is guilty of this offense beyond a reasonable doubt.

### 2. Larceny—Housing Allowances

The military judge properly instructed the members that, to support a conviction for larceny under Article 121, UCMJ, the Government must prove beyond a reasonable doubt that:

> (1) At or near RAF Mildenhall, United Kingdom, between on or about 28 May 2012 and on or about 21 January 2015; the accused wrongfully obtained . . . money from the possession of the United States;
>
> (2) The property belonged to the United States;
>
> (3) The property was of a value of more than $500;
>
> (4) That the obtaining by [Appellant] was with the intent to permanently appropriate the property to [Appellant's] own use;
>
> (5) That the property was military property.

Appellant's primary argument as to this allegation is that the evidence does not support that his obtaining of the money was wrongful, because the evidence is insufficient to show that he made a misrepresentation with an intent to deceive.

As the Government affirmatively asserted on the record, the larceny was based on a theory of taking by false pretenses, rather than by wrongful withholding. Consequently, the military judge instructed the members that:

> [O]btaining is wrongful only when it is accomplished by false pretenses with a criminal state of mind. A criminal false pretenses [sic] is any misrepresentation of fact by a person who knows it to be untrue, which is intended to deceive, which does in fact deceive, and which is the means by which the value is obtained from another without compensation.

As a result of the Government's theory of criminality, it is necessary to identify the intentional misrepresentations by Appellant that constituted the method by which he obtained the housing allowance money.

As to this, the Government presented two Air Force Form 594s, "Application and Authorization to Start Stop or Change Basic Allowance for Quarters

(BAQ) or Dependency Redetermination." The first form was submitted on 11 July 2012 and the second form was submitted on 6 August 2014.

With the exception of his wife's date of birth (that differed by one day on the forms), both of the Form 594s were filled out identically. Appellant claimed on both that his wife was living at his mother's house. The finance office used the address provided on this form to determine the additional housing allowance Appellant was entitled to receive for his wife. Appellant's own mother, however, testified that Appellant's wife moved out of her house around February or March of 2012. That was four months prior to Appellant submitting his first Form 594 and 30 months prior to his submission of the second Form 594. In addition, Appellant also went to his mother's house before his assignment to RAF Mildenhall and learned, first hand, that his wife no longer lived at his mother's house.

In addition, on both forms, Appellant certified and signed that he provided "adequate support" to his dependents. The evidence presented at trial, however, demonstrated that from at least July 2012 until January 2015, he was providing no support to his wife. In addition, after November 2012, they effectively ended all contact with one another.

Considering the evidence presented, we conclude that Appellant wrongfully obtained the additional housing allowance while he was in the United Kingdom by making repeated false statements to the finance office regarding where his wife was residing, as well as falsely representing that he was providing support to his wife. Accordingly, having made allowances for not having personally observed the witnesses, and having paid particular attention to the matters raised by Appellant, we find the evidence factually sufficient to support the conviction of theft of more than $500 of military property, by false pretenses, between the alleged timeframes of 28 January 2012 and 21 January 2015.

**E. Military Judge's Limitation of Defense Argument Regarding Medical Retirement**

Appellant argues that the military judge erred by prohibiting the Defense from arguing during sentencing Appellant's purportedly approved, and imminent, medical retirement. We disagree and conclude that the Defense affirmatively waived any error at trial.

During Appellant's written unsworn statement, Appellant wrote that he had an approved medical retirement in June of the prior year and that he was aware that, "regardless of [the member's] decision, [he] will be discharged from the military either through the MEB process or through the administrative discharge process initiated by [his] commander." He then

asked the members not to impose a punitive discharge. The Government did not rebut these assertions.

Appellant's asserted error occurred when the Defense was arguing against the imposition of a bad-conduct discharge (BCD):

> ADC: And regarding the BCD as well, you should not come away thinking that if you don't give him a [BCD] he is going to continue in the Air Force. You have heard his unsworn and you know his days in the Air Force are numbered—
>
> MJ: Counsel, sua sponte, move on.
>
> ADC: Yes, Sir. Yes, Sir.

The Defense then continued on another thread of their argument without otherwise objecting or clarifying further his intended argument.

The military judge instructed the members regarding Appellant's unsworn reference to the potential of an administrative discharge, without Defense objection, as follows:

> The accused's unsworn statement included the accused's personal statements about being administratively, or medically discharged following this court-martial. An unsworn statement is a proper means to bring information to your attention and you must give it appropriate consideration.
>
> Your deliberations should focus on an appropriate sentence for the accused for the offenses of which the accused stands convicted. For example, it is not your duty to try to anticipate discretionary actions that may be taken by the accused's chain-of-command or other authorities. Your duty is to adjudge an appropriate sentence for this accused that you regard as fair and just when it is imposed and not one whose fairness depends upon actions that others may or may not take in the future.

The Defense, for the first time on appeal, suggests that Appellant was prevented from arguing that a punitive discharge was unnecessary given Appellant's pending medical retirement. The record, however, does not support that assertion. The record did not establish with particularity what counsel intended to argue, and the military judge did not affirmatively rule that counsel was prohibited from making certain arguments. The military judge directed counsel to move on and the defense counsel agreed.

In addition, the military judge did not restrict the Defense's ability to present evidence on this matter, and the military judge appropriately instructed the members on the evidence they chose to admit. The only references to Appellant's medical retirement were in his unsworn statement. The military

judge appropriately instructed the members that they must give Appellant's unsworn statement appropriate consideration, but that their focus should be on providing an appropriate sentence for the crimes he was convicted of without reliance on what others might do in the future. Consequently, the members were appropriately instructed and Appellant was not otherwise prevented from providing admissible information in sentencing. *See United States v. Talkington*, 73 M.J. 212, 216 (C.A.A.F. 2014) (addressing a military judge's instruction regarding an appellant's unsworn statement and observing that the proper focus of sentencing is on the offense and the character of the accused, and "to prevent the waters of the military sentencing process from being muddied by an unending catalogue of administrative information.").

It is unnecessary, however, for us to address the issue now raised by Appellant regarding how a medical retirement can be argued or the limits of a military judge's discretion in controlling argument of counsel. Here, counsel affirmatively chose to continue argument without making, then or after argument, an objection to the military judge's request. Under these circumstances, we conclude that the Defense not only failed to preserve any purported error, but affirmatively waived it by agreeing to move on to another portion of argument without objection or hesitation. We reject this assignment of error.

## F. Sentence Severity

Appellant argues his sentence was inappropriately severe. We disagree.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). In determining whether a sentence should be approved, our authority is "not legality alone, but legality limited by appropriateness." *United States v. Nerad*, 69 M.J. 138, 141 (C.A.A.F. 2010) (quoting *United States v. Atkins*, 23 C.M.R. 301, 303 (C.M.A. 1957)). This authority is "a sweeping congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (quoting *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001)). This task requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). In conducting this review, we must also be sensitive to considerations of uniformity and evenhandedness. *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *United States v. Lacy*, 50 M.J. 286, 287–88 (C.A.A.F. 1999)).

Appellant, despite receiving additional housing allowance for his wife, failed to adequately support her. Despite having little to no contact with his

wife while he was stationed in the United Kingdom, he lied by claiming he was providing adequate support to her when he was actually providing none. He lied to receive money provided to him for his wife's stateside housing expenses, with an intent to permanently deprive the Government of this money by keeping it for his own personal uses. His deception, though, went even deeper. When suspicions were raised about his marriage, he responded by continually lying to leadership and investigators. It went beyond a mere denial of wrongdoing to an extravagant and convoluted lie that his pregnant girlfriend was actually his wife and that his wife went by both her legal name and his girlfriend's name.

The military judge instructed the members that the maximum punishment for these crimes was a dishonorable discharge, 30 years and 3 months of confinement, total forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Trial counsel argued that the members should impose a sentence that included a bad-conduct discharge and 15 months of confinement. The members' sentence, including a bad-conduct discharge and 30 days of confinement, was well below both the maximum available for these offenses and that argued by trial counsel.

We have given individualized consideration to this particular Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. We find that the approved sentence of a bad-conduct discharge, confinement for 30 days, forfeiture of $1,546.00 pay per month for two months, and reduction to E-1 was within the discretion of the panel and convening authority, was legally appropriate based on the facts and circumstances of this particular case, and was not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

22