# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32389**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kacey M. BAILEY**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 September 2017

———————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Bad-conduct discharge, confinement for 30 days, and reduction to E-1. Sentence adjudged 7 January 2016 by SpCM convened at Eglin Air Force Base, Florida.

*For Appellant:* Major Mark C. Bruegger, USAF; Major Lauren A. Shure, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

HARDING, Senior Judge:

A military judge found Appellant guilty, consistent with her pleas, of one specification of divers wrongful use of cocaine and one specification of wrongful

use of marijuana, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Contrary to her plea, officer members found Appellant guilty of a specification of wrongful distribution of cocaine in violation of Article 112a, UCMJ.[1] The members sentenced Appellant to a bad-conduct discharge, to be confined for 30 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises the following assignments of error (AOEs): (1) whether the conviction for wrongful distribution of cocaine is factually and legally sufficient; (2) whether the approved sentence is inappropriately severe;[2] and (3) whether it was error to place Appellant in solitary confinement for 23 hours a day solely to avoid a violation of Article 12, UCMJ, 10 U.S.C. § 812. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's conviction for the wrongful distribution of cocaine was based on the testimony of a single immunized witness, JC. By the time of Appellant's trial, JC had himself been court-martialed for divers use of cocaine, among other offenses, and had been discharged from the United States Air Force. One of those cocaine uses by JC resulted from the distribution for which Appellant was convicted. JC and Appellant were among a small group of friends patronizing a bar in Fort Walton Beach, Florida. At some point the group departed the bar but continued to socialize at Appellant's house. Shortly after arriving at Appellant's home, JC openly expressed he was "extremely tired" and unable to join the others in a drinking game in the garage. Hearing this, Appellant briefly left and returned to the garage holding a red spoon and a baggie containing cocaine. Appellant suggested to JC that he "have some of this" and that it would wake him up. Appellant then held a cocaine-filled spoon under JC's nose until JC snorted it. After ingesting the cocaine, JC immediately felt the effects and did "wake up." By the time JC left Appellant's house some hours later, he realized he was late for his squadron's physical training. When JC arrived at work, he confided in Airman First Class (A1C) TA that he missed physical training that morning due to the cocaine given to him by Appellant.

---

[1] The members found Appellant not guilty of divers wrongful distribution of methylene-dioxymethaphetamine.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of the evidence supporting her conviction for wrongful distribution of cocaine. We review both legal and factual sufficiency de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). As with legal sufficiency, the term "reasonable doubt" "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000).

At trial, Appellant attempted to impeach the credibility of JC. The effort included highlighting evidence of prior inconsistent statements, specific instances of untruthfulness, character for untruthfulness, the immunized nature of the testimony, and motives to fabricate. The military judge instructed the members on how to consider each of these evidentiary matters in evaluating the credibility of JC. The military judge also instructed the members that they could consider the statement made by JC to A1C TA regarding Appellant's distribution of cocaine to him as a prior consistent statement. Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are likewise convinced of Appellant's guilt beyond a reasonable doubt.

**B. Sentence Appropriateness**

Appellant's second and third AOEs, while framed as two separate issues, both concern the statutory duty of this court to determine what sentences should be approved based on consideration of an entire record. Sentence relief requested on this basis is generally referred to as a matter of "sentence appropriateness." In seeking sentence appropriateness relief, Appellant first argues that a sentence including a bad-conduct discharge is inappropriate given her positive service history and a lack of aggravating circumstances surrounding her offenses. Second, Appellant argues that she was improperly placed in solitary confinement and thus should be granted relief. We find neither argument persuasive.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). This task requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)) (internal quotation marks omitted). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

**1. Appellant's Service Record and the Nature of Her Offenses**

At the time of her trial, Appellant had nearly ten years of active duty service highlighted by a deployment to Iraq for four months in 2008. While her performance during her career was generally highly rated, her last couple of years of service were marred by multiple adverse administrative actions taken for showing up late to work and for driving while intoxicated. Turning to the circumstances surrounding Appellant's offenses, we note she admitted to using marijuana or cocaine on six occasions and was found guilty of distributing cocaine. We have given individualized consideration to Appellant, the nature and seriousness of her offenses, her record of service, and all other matters contained in the record of trial. Based on the facts and circumstances of this particular case, we find that the approved sentence was not inappropriately severe.

### 2. Conditions of Post-Trial Confinement

Independent of her argument that a punitive discharge is inappropriately severe given her service history and the circumstances of her offenses, Appellant asserts she is due sentence relief for being placed in solitary confinement solely to avoid a violation of Article 12, UCMJ. We disagree.

Appellant served her sentence of 30 days of confinement at both civilian and military confinement facilities. In a declaration submitted with her AOEs characterizing her time at both facilities, she states she "was placed in complete isolated confinement with the only explanation being that I was military." Appellant provided no evidence she complained about the conditions of her confinement while in either confinement facility.

Notably, Appellant does not claim that the conditions of her stay at either confinement facility constitutes cruel and unusual punishment in violation of the Eighth Amendment[3] or Article 55, UCMJ. Rather, she argues that we should grant relief under our broad Article 66(c), UCMJ, authority to approve only so much of the sentence that is just and appropriate. *See United States v. Gay*, 74 M.J. 736 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). As the United States Court of Appeals for the Armed Forces noted, however, we do not have unlimited authority to grant sentence appropriateness relief for any conditions of post-trial confinement of which we disapprove; our decision in *Gay* was authorized by Article 66(c) because it was based on a legal deficiency in the post-trial process. *Gay*, 75 M.J. at 269. In *Gay*, we found that relief was warranted for the following reasons:

> 1. No valid reason [was] offered for placing [Gay] in solitary confinement. . . .
>
> 2. If [Gay] was placed in solitary confinement solely to prevent him from being housed with a foreign national, th[at] d[id] not constitute an acceptable reason for placing [him there].
>
> 3. The unrebutted assertion in [SMSgt G's] affidavit indicate[d] that some Air Force official directed [Gay] to be placed in solitary confinement.
>
> 4. When unit leadership complained to [civilian confinement] officials, [Gay] was easily transferred to another pod that did not contain foreign nationals.

*Gay*, 74 M.J. at 743.

---

[3] U.S. CONST. amend. VIII.

Although Appellant attempts to echo one of these reasons in the framing of her AOE, her case is readily distinguishable from *Gay*. In response to Appellant's claim, the Government provided a declaration for each facility. Specifically addressing Appellant's claim that she was placed in solitary confinement solely to avoid a violation of Article 12, UCMJ, the declaration for the civilian facility recited a portion of an Air Force regulation regarding how military members are to be confined at a civilian facility. In pertinent part, the regulation directs Air Force officials to ensure to the maximum extent possible that a military confinee is separated from illegal aliens or foreign nationals and are not commingled with civilians having an opposite pretrial or post-trial status. The declaration asserts that "[m]ilitary personnel are not placed in 'solitary confinement', rather they are segregated so as to comply with this directive." The declaration further notes that if another military person of the same status were confined at the civilian facility at the same time, these military members would be able to interact during day room and recreation time. If another female military member in a post-trial confinement status would have been confined in the facility, Appellant may have been housed with that member. The declaration concerning the military confinement facility recited Department of Defense policy requiring males and females to be segregated. In her affidavit, Appellant provides that she was the only female present during her time at the military facility.

Even accepting Appellant's factual allegations as true,[4] lack of human interactions and restriction upon movement, while unpleasant, are conditions generally attendant to post-trial confinement. Further, Appellant's contention that she was placed in solitary confinement for 23 hours a day solely to avoid a violation of Article 12, UCMJ, is not supported by the record. At both facilities, the absence of another military female confinee was a major contributing factor to her relative isolation. We do not find a legal deficiency present in the post-trial processing of this case as we did in *Gay*.

Further, under Eighth Amendment and Article 55, UCMJ, jurisprudence, a prisoner must seek administrative relief prior to invoking judicial intervention. *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001). This generally means that the prisoner will have exhausted the detention center's grievance system and petitioned for relief under Article 138, UCMJ. We have not established such a requirement for exercising our Article 66(c) powers, but we do believe that failure to complain about the conditions of post-trial confinement is a factor which bears significant weight on whether we should use our power

---

[4] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and considered the entire record, we find we can resolve the issues raised by Appellant without additional fact-finding.

to disapprove a sentence to confinement in whole or part. As noted, Appellant provided no evidence she complained about the conditions of her confinement while in either confinement facility. The Government declarations specifically assert there is no record of a grievance or official complaint from Appellant regarding the conditions of her confinement at either facility.

The absence of a legal deficiency in the post-trial processing, the brevity of her stay in civilian and military confinement, the lack of egregiousness of the alleged conditions, and Appellant's failure to seek redress at the time, along with our consideration of the entire record convinces us that sentence relief is not warranted in this case.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court